IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIA BOYER, | CIVIL DIVISION |
| Plaintiff, | Case No. |
| v. | |
| WAL-MART STORES EAST, LP, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff Julia Boyer brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination and retaliation based upon her gender.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about April 29, 2019, the plaintiff timely filed a charge alleging harassment and discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2019-01313.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue on October 30, 2019.

5. This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.  *<u>The parties</u>*

6. The plaintiff Julia Boyer is an adult individual who resides at 450 Pike Run Drive, Daisytown, Washington County, PA 15427.

7. The defendant Wal-Mart Stores East, LP ("Wal-Mart") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 100 Sara Way, Belle Vernon, Fayette County, PA 15012.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D.  *<u>Factual Background</u>*

10. The plaintiff was employed by Wal-Mart, Store No. 2420, from October 12, 2018 through March 14, 2019, at which time she was constructively discharged due to a sexually hostile work environment and ongoing gender discrimination. At the time of her constructive discharge, her job title was Dairy Associate.

11. The plaintiff's duties as Dairy Associate included stocking dairy products, including milk, eggs and creamer.

12. At all times relevant, the plaintiff performed the functions of her job competently and efficiently and was considered to be a satisfactory employee.

13. At all times relevant, the co-manager of the Wal-Mart location in Belle Vernon was Jessica Rudolf.

14. While the plaintiff was employed by Wal-Mart, she was subjected to a sexually hostile environment in the workplace on account of her gender, including inappropriate comments, actions and treatment by co-workers as further detailed below.

15. Sam Scagline a co-worker, began sexually harassing the plaintiff at work in approximately November or December 2018. He told the plaintiff that another worker was romantically interested in the plaintiff's sister and he suggested that the four of them go on a double date. The plaintiff declined Scagline's proposition, but he did not relent.

16. From time to time Scagline engaged in unwanted physical contact with the plaintiff. He would put his hands around her neck and "jokingly" choke her and leave his hands on the top of her breasts. He also would kick her buttocks as she walked past him.

17. Further, Scagline regularly made threatening comments to the plaintiff about shooting people and repeatedly told the plaintiff that, "if you would ever go missing it was me."

18. Scagline often accosted the plaintiff in the lunchroom when she was eating lunch with male co-workers. Scagline insinuated in front of others that she was involved in sexual relationships with the male coworkers.

19. In late January 2019, Scagline continued to harass the plaintiff about her "relationship" with male co-workers. He said, "if I were younger, things would be different", implying that, if he were closer to the plaintiff's age, she would agree to date him. At the time, Scagline was approximately 57 years old and the plaintiff was 20 years old.

20. In early February 2019, Scagline told her male co-workers that she was trying to pit them against each other and that she was using them for money and sex.

21. On February 4, 2019, Scagline yelled at the plaintiff, "you lied to me". He repeated this several times throughout the day. As she was clocking out for the day, Scagline accosted the plaintiff and Jesse Crosby another male co-worker. Scagline told them to leave him alone. He told Crosby, "congratulations buddy, you win." The plaintiff had no idea what

Scagline was talking about. That evening, Scagline sent the plaintiff hostile and threatening text messages.

22. The plaintiff finally found out what Scagline was ranting about. Crosby told the plaintiff that some of the male workers – including Scagline – were "in a race" to be the first one to have sex with her and Scagline thought that Crosby had won that competition. Apparently, his accusations that the plaintiff had lied to her related her denials that she was romantically involved with any co-workers.

23. On February 7, 2019, Scagline continued his sexually aggressive and threatening harassment, again insinuating that she was having sex with co-workers.

24. That same day, the plaintiff reported Scagline's sexual harassment and gun threats to Rudolf.

25. Rudolf told the plaintiff that the ethics department would start an investigation. Rudolf wanted the plaintiff to focus on the gun threats instead of the sexual harassment. Rudolf transferred the plaintiff to another store location during the pendency of the investigation. The plaintiff was never contacted by anyone in the ethics department or anyone else purportedly investigating this matter.

26. Over the next couple of days, Scagline spread rumors about the plaintiff: he told the mother and aunt of Tim Seruga (a male co-worker) that the plaintiff was using him for sex. Upon learning of these rumors, the plaintiff reported Scagline's behavior to Rudolf.

27. On or about March 1, 2019, Rudolf told the plaintiff that the investigation was completed. She told the plaintiff that "appropriate action will be taken" but that, if the plaintiff wanted to feel safe, she would have to think about working permanently at another store

location. Rudolf said that Scagline would continue to work at the Belle Vernon location and that he would probably continue to harass the plaintiff if she worked the same shifts as him.

28.   Later that day, the plaintiff was walking towards the bathroom and Scagline came out of the cooler behind her and growled at her as she walked down the hallway.

29.   The plaintiff was concerned for her safety and was upset that Wal-Mart was not doing anything to protect her in the workplace so, on March 8, 2019, she filed a report with the local police department. An officer called Wal-Mart to investigate her report. The officer told the plaintiff that he had spoken to Rudolf and that Rudolf said that the plaintiff was the one harassing Scagline and that the plaintiff refused management's offers to help her.

30.   On March 11, 2019, the plaintiff learned that Scagline was still telling people that she had sex with him.

31.   On March 14, 2019, the plaintiff reported to work and talked to Rudolf about the hostile work environment. She asked Rudolf why nothing was being done about Scagline and his ongoing behavior. The plaintiff told Rudolf that working at another store permanently was not a feasible option for her. Rudolf complained that the plaintiff was taking "too long" to decide where she wanted to go. The plaintiff tried to get her schedule changed to the days when Scagline didn't work. Rudolf was cavalier about this request and said that the plaintiff "could try" but there was no guarantee that Scagline and her would never end up working similar or overlapping schedules.

32.   In light of the fact that Wal-Mart refused to do anything to resolve the sexually hostile work environment to which the plaintiff was being subjected, she felt that she had no other option except to quit her job. The plaintiff was, in effect, constructively discharged, on

account of her gender due to a sexually hostile work environment.  Further, Wal-Mart discriminated against the plaintiff on account of her gender.

## FIRST CAUSE OF ACTION

33. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

34. The plaintiff is female and thus is protected against harassment and discrimination on the basis of her gender under Title VII.

35. The plaintiff was qualified for her position.

36. As detailed above, the plaintiff was harassed in the workplace because of her gender.

37. Despite her qualifications, the plaintiff was constructively discharged.

38. The defendant's harassment and constructive discharge of the plaintiff were in violation of Title VII because it was based upon her gender.

39. The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION

40. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

41. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

42. The defendant's violations of the PHRA were committed with intentional or reckless disregard for the plaintiff's protected rights under the PHRA.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated:  December 2, 2019